MERRITT, Circuit Judge,
dissenting.
The court finds as an undisputed fact precluding a jury trial that Sander quit his job and was not fired by WKYT general manager Martin and WKYT news director Thomas. But there is material, persuasive proof to the contrary that might well con *270 vince a jury that this “he-quit” defense was pretextual and a cover for management’s decision to get rid of Sander for other reasons. The other reasons are not so clear, but there is material evidence that age may be the real reason or that Sander’s impulsive outburst at the February 21, 2008 meeting, together with poor personal relations between Sander and Thomas, was the reason — or that some combination of these reasons contributed to the outcome. I would therefore send the case to trial. There are seriously conflicting inferences and material facts in dispute that should be further developed at trial. Though not as absolute as the right to a jury trial in the Sixth Amendment, the language and history of the Seventh Amendment and Rule 56 of the Federal Rules of Civil Procedure entitle the plaintiff to a full blown trial to resolve these factual issues regarding intent, pretext, and the sequence of events. The plaintiff might turn out to be a very sympathetic, credible witness, or maybe not. Such uncertainties should be left to the jury and not preempted by judges in the name of efficiency, saving time, or doubts about jurors.
1. Did Sander quit?
Contrary to our court’s finding that plaintiff quit, news director Thomas specifically testified that he knew that Sander did not intend to quit: (Q. “And so it was clear to you that he [Sander] did not want to quit at the end of the conversation you had with him on Thursday? A. Yes.”). Moreover, Martin told Sander on the phone before their meeting on Monday, February 25, “No, nothing like that” in response to Sander’s question, “Have I lost my job?” So there is very strong evidence that neither of Sander’s two superiors, Thomas and Martin, believed contemporaneously that Sander had in fact quit. It was only later, after Thomas told Martin that Sander should be discharged, that the defendant TV station asserted as a defense that Sander had, in fact, “quit” and was not discharged. This defense came after Martin had talked to the station’s lawyers. A jury might well believe that the voluntary resignation defense was simply a contrived pretext discussed with the lawyers and set up in order to avoid a claim that Sander was discharged — one of the elements necessary for an age discrimination claim. In light of the evidence in the case, it is clear to me that there is a material dispute of fact about whether Sander voluntarily resigned or was discharged.
2. Was Sander discharged because of his age?
There is also a material dispute of fact concerning age discrimination. If the jury believes that Sander did not quit but was discharged, then there is material evidence supporting a prima facie case of age discrimination. Sander was over 40 (his age was 62 at the time his employment terminated) and had worked for WKYT for 27 years. There is strong evidence that Sander was a well-respected “senior reporter” until Thomas became the news director not long before Sander’s employment was terminated. Two months after Sander left in February 2008, Thomas, on behalf of the TV station, hired Tamara Evans, who was in her 20’s. She did some of the work that Sander had been doing. Thomas testified that Evans became a general assignment reporter at WKYT, the same position that Sander held.
In addition, there is other evidence of age discrimination. Sander testified that Thomas frequently asked him when he was going to “retire” and called Sander “old-school,” “old fashioned,” and just plain “old.” Sander’s testimony in this respect was corroborated in part by Denny Trease in his deposition at pages 45-48. This *271 evidence raises a question of material fact about whether Sander experienced age discrimination. The case should go to the jury on this issue. It should be up to the jury to decide on the inferences to be made from the facts and whether the assertion of the voluntary resignation defense, or Sander’s February 21 outburst, was a smoke screen to hide Thomas’ decision to discharge Sander because he was too “old” and too “old fashioned” to present a young and attractive face to the WKYT viewing public. The reason we have juries in civil and criminal cases is to resolve disputes based on conflicting inferences and disputes concerning intent. These are typical issues for juries in both civil and criminal cases.